# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **STEPHEN O'NEIL SIMPSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Officer ADAM CRUZ,** | § | **CIVIL ACTION NO.** |
| **Officer JAMES FLORES,** | § | |
| **Officer ANTHONY CORPUS,** | § | **SA-09-CV-0125 OG (NN)** |
| **Officer SHELLEY GRAYSON,** | § | |
| **Sergeant MICHAEL HUSER,** | § | |
| **Lieutenant SANDRA HARTOON,** | § | |
| **Lieutenant BRIAN PETERSON,** | § | |
| **Major DARREN WALLACE,** | § | |
| **Lieutenant ALBERTO DIAZ,** | § | |
| **Sergeant LIONEL PORRAS,** | § | |
| **Sergeant VERNET DAVIS,** | § | |
| **Lieutenant ROBERT BLUHM,** | § | |
| **Sergeant STEVEN HAVARD,** | § | |
| **Assistant Warden GARY HUNTER,** | § | |
| **Warden PAUL MORALES,** | § | |
| **L.V.N. PEGGY GOHLKE,** | § | |
| **Officer TIFFANY SMITH,** | § | |
| **Officer FRANCINE AGUERO,** | § | |
| **Officer JOSE AGUERO,** | § | |
| **Officer PAUL MARTINEZ,** | § | |
| **O.I.G. DAVID GUAJARDO,** | § | |
| **O.I.G. SHELIA THOMAS,** | § | |
| **O.I.G. JONNY SANTANA,** | § | |
| **Director RICK THALER,** | § | |
| | § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATION

**TO:**   **Hon. Orlando Garcia**
          **United States District Judge**


This report and recommendation recommends dismissing certain claims under Rule

12(b)(6) of the Federal Rules of Civil Procedure.[1]  Although there is no pending motion to dismiss, the "district court may dismiss an action on its own motion under Rule 12(b)(6) 'as long as the procedure employed is fair.'"[2]  In addition, analyzing the merits of a plaintiff's claim in a report and recommendation and giving the plaintiff an opportunity to object to the recommendation is a fair process for dismissing claims.  There is no question that the process used here is fair because I issued a show cause order and directed the plaintiff to show cause why certain claims should not be dismissed.[3]  The plaintiff responded to the show-cause order, conceded that claims against certain defendants should be dismissed, and set forth reasons why claims against other defendants should not be dismissed.[4]

**Nature of the case**.  Plaintiff Stephen O'Neil Simpson is a Texas inmate, committed to the custody of the Institutional Division of the Texas Department of Criminal Justice (TDCJ).  Simpson sued 24 TDCJ employees and former employees under 42 U.S.C. § 1983 for alleged violations of his constitutional rights.  Simpson alleged that, as a result of conflict between himself and defendant Tiffany Smith, defendant Adam Cruz physically assaulted him, while

---

[1]"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'  'Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

[2]*Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998).  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (explaining that the "district court may dismiss a complaint on its own for failure to state a claim" so long as a fair procedure is employed).

[3]*See* docket entry # 76.

[4]Docket entry # 78.

defendants James Flores, Anthony Corpus, and Shelley Grayson stood by and watched.[5]  Simpson complained that the latter-named defendants did not stop the assault, failed to report the assault to supervisory officials, and did nothing to provide him with medical attention.  Simpson alleged that he notified various TDCJ employees—also defendants—about the assault, but that no one investigated the incident or took appropriate action.  Simpson alleged that other defendant TDCJ employees retaliated against him because he complained about the assault.  As relief, Simpson seeks a transfer to a TDCJ unit closer to his home, the criminal prosecution of those responsible for his assault, and $350,000.00 for pain and suffering, mental anguish and punitive damages.[6]

**Claims against defendant Cruz**.  Simpson alleged that Cruz violated his civil rights by using excessive force.  Cruz has never been served with process.  "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."[7]  Without service of process, the court does not obtain personal jurisdiction over a defendant.[8]  The court cannot render a judgment against a defendant unless he has been served, has waived service, or entered an appearance.

Because Simpson proceeded in forma pauperis, I directed the U.S. Marshal to serve Cruz with a summons and a copy of Simpson's complaint.  After learning Cruz is no longer a TDCJ

---

[5]Docket entry # 48, pp. 8-9.

[6]*Id*. at p. 6.

[7]*Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).

[8]*Id*.

employee,[9] I directed the U.S. Marshal to serve Cruz at his last-known address.[10]  The U.S.

Marshal first attempted service by certified mail. The first summons was returned by the U.S.

Postal Service on November 11, 2009, unexecuted.[11]  I then directed the U.S. Marshal to

personally serve Cruz.[12] The U.S. Marshal attempted to serve Cruz the second time by certified

mail.  The U.S. Postal Service returned the second summons on February 22, 2010, unexecuted.[13]

The U.S. Marshall then attempted to personally serve Cruz on three dates: March 17, 2010;

March 22, 2010; and April 1, 2010.[14]  The summons reflecting three unsuccessful attempts was

returned to the court on May 11, 2010.

     The court lacks personal jurisdiction over Cruz because Cruz has not been served.

Because the court lacks personal jurisdiction, Simpson cannot proceed with his claims against

Cruz.  In his response to my show-cause order, Simpson asked the court to serve Cruz and retain

his claims against Cruz.[15]  Service is the plaintiff's responsibility,[16] but the court has made

reasonable efforts on Simpson's behalf to serve Cruz.  Unless Simpson can provide an address

where Cruz can be served, the claims against Cruz should be dismissed for lack of personal

---

[9]Docket entry #s 24 & 31.

[10]Docket entry # 33.

[11]Docket entry # 45.

[12]Docket entry # 62.

[13]Docket entry # 67.

[14]Docket entry # 75.

[15]Docket entry # 78, p. 2.

[16]Fed. R. Civ. P. 4(c) ("The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) . . . ."

jurisdiction.

**Simpson's excessive-use-of-force claim**.  Simpson alleged an excessive use of force by Cruz, Flores, Corpus, Grayson, and Smith.[17]  The Eighth Amendment to the U.S. Constitution protects those convicted of a criminal offense against malicious and sadistic uses of official force. To prevail in an excessive-use-of-force claim, the inmate must prove that the prison guard used "excessive physical force in violation of the Cruel and Unusual Punishments Clause" and that the force was applied "maliciously and sadistically to cause harm" rather than as a good-faith effort to maintain or restore order.[18]

The claim against Smith fails to state a claim upon which relief may be granted because Simpson alleged no use of force by Smith[19] and he did not allege that Smith was present during the alleged assault.  In his response to my show-cause order, Simpson insisted that his claim against Smith should be retained because Smith set into motion the events that lead to the alleged assault.[20]  According to Simpson, Cruz would not have assaulted him had Simpson not had problems with Smith.  Simpson alleged that the alleged assault occurred after he complained that Smith entered his cell, read his personal mail complaining about Smith, and destroyed his personal property.  Simpson stated that on the day of the alleged assault he refused to enter his cell until prison authorities photographed the damage Smith did to his property.[21]  Simpson

---

[17]Docket entry # 64.

[18]*Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

[19]Docket entry # 78, p. 4 (conceding that Smith did not physically participate in the assault).

[20]Docket entry # 78, p. 3-5.

[21]Docket entry # 4, p. 6; docket entry # 8, p. 2; docket entry # 78, p. 3.

alleged that Cruz assaulted him when Simpson refused to enter his cell.

Viewing Simpson's allegations as true, the impetus for the assault was Simpson's refusal to enter the cell.  Simpson refused to enter the cell because of Smith's actions, but Cruz used the force complained of because Simpson refused to enter the cell.  While the law provides in some circumstances for liability based on indirect participation in the violation of a person's constitutional right,[22] this is not one of those circumstances.  Simpson alleged that he refused to enter his cell because Smith destroyed his property and explained how that refusal lead to the use of force, but he did not establish a causal connection between Smith's action and Cruz's action such that Smith knew or should reasonably have known that Cruz would use force to make Simpson re-enter his cell.  The excessive-use-of-force claim against Smith should be dismissed for failing to state a claim.

**Simpson's failure-to-protect claim**.  In a second constitutional claim, Simpson alleged that certain defendant TDCJ employees violated the Eighth Amendment by failing to protect him. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."[23]  In a typical failure-to-protect claim, a prison inmate alleges that even though prison officials knew he faced a substantial risk of injury from other inmates, prison guards failed to protect him from that risk.  A prison official may be liable for failing to protect an inmate from other inmates if he knew of an

---

[22] *See Conner v. Reinhard*, 847 F.2d 384, 397 (7th Cir. 1988) ("Any official who 'causes' a citizen to be deprived of her constitutional rights can also be held liable. The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights.").

[23] *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

excessive risk to inmate health or safety and disregarded that risk.[24]  A prison official knows of

an excessive risk only if he was subjectively aware of the risk.[25]  Although Simpson complained

about the failure to protect him from a prison guard rather than from an inmate, the analysis is the

same:[26]  A prison official may be liable for failing to protect an inmate from another prison guard

if he knew of an excessive risk to inmate health or safety posed by the other prison guard and

disregarded that risk.

     The basis of Simpson's failure-to-protect claim varies according to defendant.  As to

Flores, Corpus, and Grayson, Simpson alleged that those defendants failed to protect him from

the alleged attack by Cruz.  This allegation is sufficient to state a failure-to-protect claim because,

if Simpson's allegations are true, Simpson faced a substantial risk of injury from Cruz's assault

which Simpson alleges these defendants witnessed.  Simpson can proceed with his claim against

Flores, Corpus, and Grayson under the theory of bystander liability. [27]

---

[24]*Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

[25]*Id.*

[26]*See Williams v. Davis*, No. 3:09-CV-0296-B, 2009 WL 928318, at * 3 (N.D. Tex. Apr. 6, 2009) ("The same reasoning applies when a prison guard fails to take reasonable measures to protect an inmate from another guard's use of excessive force.").

[27]*See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) ("[A police] officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983 [for the excessive use of force by another officer under the theory of bystander liability".); *Hicks v. Page*, No. H-08-2486, 2010 WL 793684, at *7 (S.D. Tex. Mar. 4, 2010) ("A prison guard has a duty to intervene and attempt to end an assault on an inmate [by another prison guard]. . . . An officer may be liable under section 1983, under a theory of bystander liability, if he (1) knows that a fellow officer is violating an individual's constitutional rights, (2) has a reasonable opportunity to prevent harm, and (3) chooses not to act."); *Williams v. Davis*, No. 3:09-CV-0296-B, 2009 WL 928318, at * 3 (N.D. Tex. Apr. 6, 2009) (explaining that a prison guard may be liable if he failed to take reasonable measures to protect an inmate from the another prison guard's use of excessive force); *Terrell v. Castleberry*, No. H-06-2025, 2008 WL 687519, at * 5 (S.D. Tex. Mar. 12, 2008) ("A prison guard has a duty to intervene and attempt to end

Simpson's claim against the remaining defendants[28] fails to state a claim because Simpson did not allege a substantial risk of future harm from a prison guard—instead, he complained about harm from a past assault.  Rather than complaining he faced a risk of being assaulted, Simpson complained that defendant prison employees retaliated against him because he complained he was assaulted.  Specifically, he complained that: (1) those he complained to either did not believe him or refused to discipline Cruz; (2) he was moved from cell-to-cell every three to seven days; (3) his addresses were confiscated; (4) on one occasion, he was moved to a cell with an inoperable sink, requiring him to eat with the smell of backed-up sewage; (5) on another occasion, his hands were handcuffed too tightly; and (6) on another occasion, he was placed in a cell without cold water and with a spider-webbed, busted window.[29]  These allegations do not rise to the level of a substantial risk of harm because they do not indicate Simpson faced a risk of serious injury to his future health.[30]  The conditions Simpson complains about may have been uncomfortable, but the Constitution "does not mandate comfortable prisons."[31]

In his response to the show-cause order, Simpson conceded that the claims against

---

an assault on an inmate. . . . . The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer.").

[28]As additional defendants for his failure-to-protect claim, Simpson named: Paul Morales, Gary Hunter, Darren Wallace, David Guajardo, Shelia Thomas, Jonny Santana, Richard Thaler, Steven Harvard, Robert Bluhm, Vernet Davis, Lionel Porras, Alberto Diaz, Brian Petersen, Sandra Hartoon, and Michael Huser.  Docket entry # 64.

[29]Docket entry # 48.

[30]*See Farmer*, 511 U.S. at 843 ("The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health[]'. . . .") (internal citation omitted).

[31]*Farmer*, 511 U.S. at 832 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

defendants Harvard, Bluhm, Davis, Petersen, Hartoon, and Huser should be dismissed.[32]
Simpson argued that the claims against defendants Morales, Hunter, Wallace, Diaz, and Porras
should be retained because these defendants failed to protect him from Smith's harassment and
retaliation despite his repeated complaints about Smith.[33]  This argument misses the point of a
failure-to-protect claim.  To prevail on his failure-to-protect claim, Simpson must show that the
defendant prison officials knew that Smith posed an excessive risk to Simpson's health or safety
and disregarded that risk.  Viewing Simpson's allegations as true, the defendant prison officials
knew that Smith harassed and retaliated against Simpson for his continued complaints about
Smith, but they did not know Smith posed an excessive risk to Simpson's health or safety.
Nothing about Simpson's allegations suggests the defendants knew he faced a risk of serious
injury to his future health.  For this reason, Simpson's failure-to-protect claim against Morales,
Hunter, Wallace, Diaz, and Porras fails to state a claim upon which relief may be granted.

Although I directed Simpson to show cause why his failure-to-protect claim should not be
dismissed as to Guajardo, Thomas, Santana and Thaler, Simpson did not address his claim as to
those defendants in his response.  To the extent that Simpson still seeks to hold those defendants
liable for failing to protect him, the claim fails for the same reason the claim fails as to Morales,
Hunter, Wallace, Diaz, and Porras.  Simpson's failure-to-protect claim as to defendants Morales,
Hunter, Wallace, Guajardo, Thomas, Santana, Thaler, Harvard, Bluhm, Davis, Porras, Diaz,
Petersen, Hartoon, and Huser should be dismissed for failing to state a claim.

**Simpson's conditions-of-confinement claim**.  In Simpson's third constitutional claim,

---

[32]Docket entry # 78, p. 6.

[33]*Id*. at pp. 6-7

9

Simpson alleged that certain defendants[34] violated the Eighth Amendment's prohibition against cruel and unusual punishment through deliberate indifference to his health and safety.  "The Eighth Amendment . . . prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes."[35]  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."[36]  "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' 'only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation.'"[37]

Simpson did not allege that he was denied the minimal civilized measure of life's necessities.  Instead, he complained about being moved from cell-to-cell, twice being housed in cells with inoperable plumbing, and once being handcuffed too tightly.  Even if true, the alleged circumstances did not deny Simpson the minimal civilized measure of life's necessities.[38]  For this reason, Simpson failed to state a claim for violation of the Eighth Amendment's  prohibition against cruel and unusual punishment.

---

[34]As defendants for his conditions-of-confinement claim, Simpson named: Paul Morales, Gary Hunter, Darren Wallace, Peggy Gohlke, David Guajardo, Shelia Thomas, Jonny Santana, Richard Thaler, Steven Harvard, Robert Bluhm, Vernet Davis, Lionel Porras, Alberto Diaz, Brian Petersen, Sandra Hartoon, Michael Huser, Shelley Grayson, James Flores, and Anthony Corpus.

[35]*Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991).

[36]*Farmer*, 511 U.S. at 829.

[37]*Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal citations omitted).

[38]*See Newman v. St. of Ala.*, 559 F.2d 283, 291 (5th Cir. 1977)("If the State furnishes its prisoners with reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety, so as to avoid the imposition of cruel and unusual punishment, that ends its obligations under Amendment Eight.").

10

In his response to the show cause order, Simpson conceded that the conditions of confinement claim against Harvard, Bluhm, Davis, Porras, Diaz, Petersen, Hartoon, Huser, Grayson, Flores and Corpus should be dismissed.[39]  Simpson argued that the claim as to Morales, Hunter, Wallace, Guajardo, Thomas, Santana, Gohlke, and Thaler should be retained because he was denied medical treatment after the alleged assault and because he was subsequently moved to cells with maintenance problems.[40]  This argument misses the point of a conditions-of-confinement claim.  To prove his claim, Simpson must prove that the defendant prison officials were deliberately indifferent to a substantial risk of serious harm.  The conditions Simpson complained about do not rise to the level of a substantial risk of serious harm.

In addition, Simpson did not complain about a serious medical need.  "A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention."[41]  Simpson complained about "cuts, bruises and abrasions from [his] head down to his knees."[42]  These injuries may have caused pain, but they do not rise to the level of a serious medical condition.  Simpson did not allege conditions posing a substantial risk of harm.  For this reasons, Simpson's

---

[39]Docket entry # 78, p. 7.

[40]Docket entry # 78, pp. 6- 8.

[41]*Watson v. Quarterman*, No. H-06-3260, 2008 WL 552447, at * 12 (S.D. Tex. Feb. 27, 2008); *Rodriguez v. Neuse*, No. H-05-0877, 2005 WL 2810715, at * 5 (S.D. Tex. Oct. 27, 2005).

[42]Docket entry # 78, p. 2.  *See* docket entry # 4, p. 6 (complaining about blood, cuts and abrasions), p. 7 (complaining about pain, swelling, cuts and abrasions), p. 8 (complaining about pain from swelling and cuts); docket entry # 8, p. 2 (complaining about extreme pain in his wrists and arms from handcuffs), p. 3 (complaining about his hands being bluish-purple from the handcuffs and a bleeding forearm), p. 4 (complaining about redness, swelling, cuts, abrasions and pain), p. 6 (asserting that he experienced numbness in his hands for three weeks after the assault).

11

claims against to Morales, Hunter, Wallace, Guajardo, Thomas, Santana, Gohlke, and Thaler fail to state a claim upon which relief may be granted. Simpson's conditions-of-confinement claim should be dismissed for failing to state a claim.

**Claims against Francine Aguero, Jose Aguero, and Paul Martinez**. Simpson did not allege that defendants Francine Aguero, Jose Aguero, and Paul Martinez violated a constitutional right. In his response to the show-cause order, Simpson asked for dismissal of claims against those defendants.[43] Accordingly, claims against those defendants should be dismissed.

**Recommendations**. For the reasons discussed in this order, I recommend dismissing the following claims:

a. Claims against Cruz because the court lacks personal jurisdiction over Cruz;

b. The excessive-use-of-force claim against Smith;

c. The failure-to-protect claim against defendants Morales, Hunter, Wallace, Guajardo, Thomas, Santana, Thaler, Harvard, Bluhm, Davis, Porras, Diaz, Petersen, Hartoon, and Huser;

d. The conditions-of-confinement claim; and

e. Claims against Francine Aguero, Jose Aguero, and Paul Martinez.

If the district judge accepts these recommendations, the following claims will remain: Simpson's excessive-use-of-force and failure-to-protect claims against Flores, Corpus, and Grayson.

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the

---

[43]Docket entry # 78, p. 8.

clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[44] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[45]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[46]

> **SIGNED** on July 8, 2010.

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[44]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[45]*Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[46]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

13